Dennis Gines  
SID# 12019691  
Oregon State Penitentiary  
2605 State Street  
Salem, Oregon 97310-1346

FILED26 MAY '17 12:02USDC-ORP

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON

| | |
|---|---|
| **DENNIS GINES,** | Case No. 6:17cv00841-SI |
| Plaintiff, | |
| v. | |
| **OREGON DEPARTMENT OF CORRECTIONS (ODOC)**, a political Subdivision in charge of the Oregon State Penitentiary (OSP); **COLLETTE PETERS**, Director, ODOC; **JEFF PREMO**, Superintendent, OSP; **KEITH DAVIS**, OSP Food Services Manager; **RICHARD RIDDERBUSCH**, OSP Assistant Food Services Manager, **CARRIE COFFEY**, OSP Health Services Manager; **JULIE McCRAE**, OSP Health Services Nurse; **BRENDEN MAGEE**, OSP Health Services Nurse Manager; **OREGON STATE BOARD OF NURSING (OSBN)**, a political subdivision of the executive branch of the State of Oregon; **ROBERTA POOLE**, OSBN Complaint Intake Coordinator, | **COMPLAINT**<br>*(Civil Rights under 42 USC §1983)*<br><br>Jury Trial Demanded |
| Defendants. | All Defendants are sued in their official and personal capacities for monetary relief. |

I

NATURE OF THE ACTION

1. This civil rights action under 42 United States Code Section 1983 is brought by a citizen of the state of Oregon. Plaintiff seeks monetary damages as delineated below. Attorney fees and costs are sought against all Defendants where incurred. All defendants are sued in their official and personal capacities. Pendant state tort claims are also brought in the nature of

Intentional Infliction of Emotional Distress, Medical Malpractice, Strict Liability and Negligence.

## II

## JURISDICTION

2. This Court has jurisdiction by virtue of 28 United States Code Sections 1331 and 1343. This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 United States Code Section 1983. This court has supplemental jurisdiction over the questions of Oregon State constitutional, statutory, and administrative law pursuant to 28 U.S.C. §1367.

## III

## PARTIES

3. Plaintiff is a citizen of the state of Oregon and currently a prisoner at the Oregon State Penitentiary (OSP).

4. OREGON DEPARTMENT OF CORRECTIONS (ODOC) is a government agency that has oversight over the Oregon State Penitentiary, including OSP Food Services, and OSP Health Services.

5. COLLETTE PETERS is the director of the Oregon Department of Corrections who is responsible for assuring health care is properly provided to Oregon prisons, and that inmates of the Oregon Department of Corrections are provided a safe environment and adequate equipment in their work assignments.

6. JEFF PREMO was the superintendent of the Oregon State Penitentiary who had oversight over the Oregon State Penitentiary, including OSP Food Services and OSP Health Services, throughout the period of time in which the events of this complaint took place.

7. KEITH DAVIS is the Oregon State Penitentiary Food Services Section manager who is responsible for the unsafe working environment in which Plaintiff was originally injured and who established a policy of denying protective work boots to his workers.

8. RICHARD RIDDERBUSCH is the Oregon State Penitentiary Food Services Section assistant manager who is responsible for the unsafe working environment in which Plaintiff was originally injured and who denied protective work boots for Plaintiff two weeks before his injury.

9. CARRIE COFFEY is the Health Services Manager for the Oregon State Penitentiary who is responsible for the training and management of nurses who work for the prison, and who oversaw and participated in covering up the actions of nurse Julie McCrae that are a subject of this Complaint.

10. JULIE McCRAE is a nurse who works for the Oregon State Penitentiary Health Services Section and who is directly responsible for the intentional re-injury inflicted on Plaintiff during his medical treatment.

11. BRENDEN MAGEE is a nurse manager who works for the Oregon State Penitentiary Health Services Section and who is responsible for attempting to conceal or cover up the actions of Nurse McCrae.

12. The OREGON STATE BOARD OF NURSING (OSBN) is the political subdivision of the executive branch of the State of Oregon which oversees licensure, certification, education, and compliance of registered nurses, licensed practical nurses, nursing assistants, and advanced practical nurses.

13. ROBERTA POOLE is an OSBN Nursing Complaint Intake Coordinator in charge of reviewing licensee medical complaint allegations.

IV

ATTORNEY FEES

14. Attorney fees, if incurred, are sought against all defendants.

V

PLRA INFORMATION

15. Plaintiff has not filed any previous federal court actions.

VI

NATURE OF THE CASE

16. Plaintiff was required to work in unsafe working conditions without adequate protective footwear, resulting in a serious physical injury to his feet, then denied adequate medical treatment constituting cruel and unusual punishment under the Eighth Amendment to the United States Constitution in the form of prolonged suffering from being required to work in unsafe working conditions, from the improper treatment of his burn wound, and from the Defendants' efforts to conceal their wrongdoing.

VII

FACTS COMMON TO ALL CLAIMS

17. On May 30, 2015, Plaintiff's feet were badly burned while working in the Oregon State Penitentiary (OSP) Food Services Section. (See Attachment 1 – OSP Inmate Injury Report.) While Plaintiff was doing his job, another inmate worker was working on the floors without caution signs or proper training. He was using five-gallon buckets of boiling water from the steam kettles to clean the floors. As Plaintiff walked into the room, the other inmate worker dumped boiling water onto the floor and it came from under the grill, immediately filling both of

Plaintiff's shoes. This caused severe burns to Plaintiff's feet, which required treatment for over 21 days.

18. Prior to this incident, Plaintiff asked the Assistant Food Services Manager, Richard Ridderbusch, to provide him with work boots, but Mr. Ridderbusch refused. Mr. Ridderbusch said the food services section only provided work boots for a few select inmates (approximately ¾ of the inmates working there) and that Plaintiff was required to wear his own shoes. Mr. Ridderbusch stated this policy came from Food Services Manager Keith Davis. However, this was an unreasonable approach to safety because the entire food services section contains various hazards, including the boiling water that injured Plaintiff. Plaintiff was working under the same hazardous conditions as those who were provided boots. If Plaintiff had been issued boots, he would not have been injured. (See Attachment 2 – Grievance No. OSP-2015-06-052.)

19. After Plaintiff's injury, he was not assisted with submitting an accident report or provided any instruction for making a claim with the Inmate Injury Fund. In fact, it was apparent this procedure was deliberately left vague and unexplained in an attempt to confuse those who need to make claims so that they will make procedural mistakes or miss deadlines. In fact, to this date, Plaintiff has not been provided any actual guidance on this matter and Plaintiff does not know the status of any potential claim.

20. As a result of these preventable injuries, Plaintiff was treated in the OSP infirmary. While Plaintiff was being treated by J. Olachea, RN, and W. Hughes, RN, he was asked by both nurses what time he wanted on his daily treatment pass, and was told by them to be aware that whatever time he chose would stay the same throughout the duration of his treatments. Plaintiff chose 6:00 PM. Plaintiff's treatment went well for several days with no complaints from staff until he was treated by defendant nurse Julie McCrae. On 06-04-15, when Nurse McCrae was on

duty, she expressed her anger with Plaintiff for being scheduled to change his bandages at a time she disagreed with. Defendant McCrae asked Plaintiff why he was there. Plaintiff replied that he was there for his bandage change. Defendant McCrae said, "No, not that. Why are you here for bandage change at 6:00 p.m.?" Plaintiff replied that he had previously been issued a pass to the infirmary for 6:00 p.m. daily bandage treatments. Defendant McCrae immediately gave Plaintiff an attitude and she was very angry that his bandage changes were scheduled for the evening. She was very rude and insisted that his bandage changes be scheduled for 3:00 p.m. starting on 06-05-15. Plaintiff asked McCrae to please leave him at 6:00 p.m., but she rudely said, "No!" On 06-05-15, Nurse McCrae was not on duty and Plaintiff asked another nurse, Nurse Hughes, if he could get his bandage change schedule returned to 6:00 p.m. She said okay and rescheduled him daily at 6:00 p.m. On 6-9-15 while Plaintiff was in the Health Services waiting room waiting for treatment Defendant McCrae was leaving her shift and saw Plaintiff there at 6:00 p.m. The next day, shortly after Defendant McCrae returned to her shift at 2:00 p.m., on 6-10-15, Nurse McCrae found out that Plaintiff had his schedule altered and had him specially called to the infirmary at 2:45 p.m. by a cell block sergeant's pass, several hours ahead of his 6:00 p.m. appointment. (See Attachment 5 – Block Sergeant's Pass.) When Plaintiff arrived, Nurse McCrae had an inmate infirmary worker hold open the door for Plaintiff to enter, ahead of other inmates in the waiting room who had been there waiting before Plaintiff arrived. Defendant McCrae immediately began to yell at Plaintiff for having his schedule changed. Plaintiff then explained that he had asked to have the time changed back. Nurse McCrae screamed that Plaintiff could not just go behind her back to get his schedule changed. She also claimed Plaintiff was undermining her authority and she changed his time back to 3:30 p.m. She then put a note in the computer to reset his bandage change time, and for no one to change his bandage change

schedule in the future. Nurse McCrae then insisted that she change Plaintiff's bandage, since he was already there. Plaintiff clearly sensed Defendant McCrae's hostility, so he tried to unwrap his Coban bandage before she could inure him, but he ran out of time. Coban bandages are much like an ace bandage, except that Coban bandages have adhesive on them so that they stick to themselves. Plaintiff had two layers of the bandage around his feet, one layer around the ankle to keep it in place and then two more layers around his feet. Plaintiff hastily attempted to unwrap his bandage, because Defendant McCrae was clearly angry, and Plaintiff was afraid that she might harm him in the process of removing the bandage. As Plaintiff got the bandage down to the two layers around his foot, he was explaining to Nurse McCrae that his wound was still fresh, in response to her question of why he was still getting treatment after so long. Plaintiff further explained that his wounds were not healed yet, and that the day before another nurse had extended his treatment for another week. Defendant McCrae said, "I'll be the judge of that," as she grabbed the bandage and pulled it straight up, causing the bandage and gauze pad to twist around Plaintiff's foot until it finally came loose. Nurse McCrae had assumed Plaintiff's wound was healed more than it actually was, because she has no proper training. She tore Plaintiff's wound open and removed flesh, causing it to bleed. Defendant McCrae immediately began to laugh as if there was no problem, as soon as she saw what she had done to Plaintiff's wound. She said, "Look, there's no blood," even as she began to use towels to soak up the blood from her mistreatment and abuse. This was assault and battery. Plaintiff's bandages had been changed twelve times previously and Plaintiff's feet were never re-injured, until Nurse McCrae deliberately and vindictively ripped the bandage from Plaintiff's foot. It is clear that Defendant McCrae retaliated against Plaintiff to punish him for having his treatment time changed against her wishes, land she further damaged Plaintiff's wound as a result. Her mistreatment of Plaintiff's

foot was painful and it caused his injury to take longer to heal than necessary. Her actions were unwarranted and unprofessional. (See Attachment 3 – Grievance No. OSP-2015-07-016.)

21. On 06-11-2015, the day after Nurse McCrae's medical abuse, during Plaintiff's next treatment, he explained Nurse McCrae's abuse to RN J. Olachea, who was very apologetic. Plaintiff asked him to please bring a second nurse to witness the bloody bandage that was being changed because there had never previously been a bloody bandage. RN. W. Hughes then entered the room and Plaintiff explained what Nurse McCrae did to his injury the day before. Plaintiff wanted both nurses, Olachea and Hughes, to witness the bloody bandage; after all, they had changed most of Plaintiff's bandages up to that date and could testify to the fact that the bandages had not been bloody until they removed the bandaging done by Nurse McCrae.

22. Unfortunately, Plaintiff's medical file had been misplaced for several days prior to this incident and Plaintiff asked both Nurses, Olachea and Hughes, to please take a mental note and to document their findings into Plaintiff's medical file as soon as it was located. They said they would.

23. When Defendant McCrae had summoned Plaintiff to Health Services on 6-10-15, Plaintiff scanned his I.D. Card in the desk officer's scanner, documenting his being present in Health Services for at least one half hour. However, Plaintiff's medical records show that Defendant McCrae did not log into the Progress Notes or Physician's Notes sections any reason for Plaintiff being in Health Services on 6-10-15. Given that standard procedure in ODOC Health Services is to log in an inmate's medical record every time an inmate receives treatment, this was patently Defendant McCrae's attempt to conceal her infliction of physical injury and emotional distress upon Plaintiff. The day of Nurse McCrae's infliction of further injury to Plaintiff's wound, Plaintiff sent a three-page Inmate Communication (kyte) with complete details

of the facts of her actions and asking her why she had done this to him. She has not responded to that communication. Plaintiff also sent Nurse Manager Coffey a kyte stating the facts of the actions of Nurse McCrae and asking Coffey not to allow McCrae to treat or re-injure him in his remaining treatments of the following week. Defendant Coffey has not responded to that communication. For some time after this, each time Plaintiff would be in the Health Services waiting area waiting to be called in to receive treatment or to see Health Services staff, when Nurse McCrae would see through the window into the waiting area from the nurses' working area that Plaintiff was waiting, Nurse McCrae would make mocking faces at Plaintiff.

24. When Plaintiff did not hear back from either nurse Olachea or Hughes within the 30-day limit to file a grievance, he sent them both kytes (communication forms) to remind them that they said they would make a notation in Plaintiff's file of the condition of his foot. Plaintiff did not get a response from them, so he sent them follow-up kytes expressing his concerns. Instead of getting a response back from either nurse Olachea or Hughes, Plaintiff received on the same day a response from Nurse Manager Magee to six separate kytes that Plaintiff had addressed to Nurses Olachea and Hughes. In one response, Defendant Magee advised Plaintiff not to send any more kytes to his nurses and accused Plaintiff of using "staff splitting tactics" even though all Plaintiff was attempting to do was to have his medical file updated to accurately reflect what occurred. The next day, Nurse Manager Magee issued Plaintiff a Major Disciplinary Report for writing to his nurses. (See Attachment 10 – Misconduct Report with disputed kites attached.)

25. It is clear that Nurse manager Magee intercepted all of Plaintiff kytes in a deliberate effort to prevent him from documenting the improper actions and abuse of one of his nurses, Nurse McCrae. To do this, he falsely accused Plaintiff of attempting to cause problems between staff. This was completely false and dishonest. The only request Plaintiff made in his

communications to Nurses Olachea and Hughes was to log the incident they witnessed into Plaintiff medical file so that he could document what occurred. (See Attachment 4 – Grievance No. OSP-2015-07-067.)

26. Plaintiff is entitled to have his medical file accurately reflect the truth. It was actually Nurse Manager Magee that was seeking to manipulate Plaintiff's file. Moreover, Plaintiff is required by rule to document and prove any grievance claims he may make. Plaintiff is also allowed by rule to communicate with staff. OAR 291-109-0120. OAR 291-109-0120(4) states that "staff should make every effort to respond to an inmate communication form within seven days of receipt." It does not say that other staff should intervene in the communication. However, nurse manager Magee intervened and did not allow this process to occur. Instead, nurse Manager Magee directly ordered Plaintiff not to communicate with staff, thereby in violation of the aforementioned rule, and issued a disciplinary report to Plaintiff for his legitimate efforts to have his medical file updated accurately.

27. Nurse Manager Magee attempted to cover-up the abuse by Nurse McCrae and, in doing so, violated Plaintiff's right to be free from cruel and unusual punishment under the constitutions of both Oregon and the United States. Nurse Magee also engaged in obstruction of governmental or judicial administration in violation of ORS 162.235. Additionally, he tampered with witnesses and public records in violation of ORS 162.285 and 162.305. Furthermore, nurse manage Magee engaged in coercion in violation of OAR 163.275 when be improperly attempted to force, or intimidate Plaintiff into abstaining from seeking to update his medical records and to complain about Nurse McCrae.

28. Plaintiff filed a grievance with the Oregon State Penitentiary Grievance Coordinator on Defendant McCrae for re-injuring his wound. In response to this grievance Defendant

McCrae denied re-injuring Plaintiff's wound. (See Attachment 3 – Grievance No. OSP-2015-07-016.)

29. Plaintiff filed his first complaint with the Oregon State Board of Nursing (OSBN) on 12-16-15 alleging the same issues as described above against Nurses McCrae and Magee. Plaintiff did not send this first complaint certified mail because he believed that OSBN would respond professionally and honestly. However, OSBN did not respond to Plaintiff's complaint. (See Attachment 6 – Full Record of Correspondence with OSBN.)

30. Plaintiff subsequently sent letters to OSBN requesting information on the status of the complaint he had filed and updating them on his continuing difficulties with communicating with Defendant Magee about his complaint against Defendant McCrae. It was not until Plaintiff sent a third letter to OSBN via certified mail that Plaintiff received a reply from OSBN approximately one year after sending his initial complaint. OSBN responded that it had never received Plaintiff's complaint. OSBN sent Plaintiff two complaint forms, which he completed and returned to OSBN on 11-1-16, along with copies of his first complaint, copies of the follow-up letters he had sent OSBN before, and a copy of a mail log provided by Oregon State Penitentiary Law Library documenting that Plaintiff had sent his first complaint to OSBN on 12-16-15, along with a cover letter asking why OSBN had not contacted him until his third letter to them, and asking that they investigate his complaint. OSBN did not respond to Plaintiff's request for an investigation, and denied his complaint, stating that OSBN found nothing wrong with Defendant McCrae's ripping the bandage from Plaintiff's wound, causing re-injury. OSBN is clearly attempting to conceal and cover up Defendant McCrae's actions in re-injuring Plaintiff. (See Attachment 6 – Full Record of Correspondence with OSBN.)

31. Following OSBN's denial of Plaintiff's complaint, on 3-28-17 Plaintiff sent a letter via certified mail to OSBN asking for an appeal packet in order to appeal OSBN's response to his complaint. Plaintiff has received no response to his request to OSBN for an appeal packet. Plaintiff addressed a letter to Oregon Office of the Governor, Attn: Boards & Commissions, requesting information on how to file a complaint against OSBN. Plaintiff has received no response from Boards & Commissions. (See Attachment 7 – Letter to Boards & Commissions.) Plaintiff also sent a five-page letter to Oregon Governor Kate Brown explaining in detail his complaint against Nurses McCrae and Magee, asking that the Governor send him information on how to file a complaint with the Governor against these nurses, and asking for information on how to file an appeal of the decision of OSBN. Plaintiff has received no response from either OSBN or the Governor. (See Attachment 8 – Letter to Governor.)

32. Plaintiff has filed a grievance with the Oregon State Penitentiary Grievance Coordinator against Defendant Carrie Coffey for her continued attempts to cover up or conceal Defendant McCrae's wrongdoing. Defendant Coffey has intercepted two kytes that Plaintiff addressed to Nurse Hughes asking in OSBN has contacted Nurse Hughes with regard to the complaints Plaintiff has filed with OSBN. Defendant Coffey has declared these kytes as inappropriate and gave Plaintiff an order not to make similar attempts to communicate with nursing staff in the future. In attempting to communicate with Nurse Hughes Plaintiff was doing nothing more than attempting to follow up on his legitimate complaints about the abuse he suffered at the hands of Defendant McCrae. Moreover, Plaintiff is required by ODOC rule to document and prove any grievance complaints he may make against ODOC employees. Plaintiff also must document and prove the factual basis for his complaints to OSBN. Plaintiff is allowed by ODOC rule to communicate with ODOC staff via the established ODOC inmate

communication forms which Plaintiff always uses. OAR 291-109-0120. OAR 291-109-0120(4) states that staff should make every effort to respond to an inmate communication form within seven days of receipt. It does not say that other staff should intervene in the communications. However, Defendant Coffey has continued to intervene and did not allow this process to proceed. Instead, Defendant Coffey directly ordered Plaintiff not to communicate with staff, thereby violating the aforementioned rule, for Plaintiff's legitimate efforts to have his medical records updated accurately. Defendant Coffey is also tampering with witnesses to the actions of Defendant McCrae by subverting the communications between Plaintiff and the witnesses. The grievance process on this complaint against Defendant Coffey is not yet exhausted. (See Attachment 9 – Grievance.)

## VIII

## DEFENDANTS' CULPABILITY

33. Each Defendant was aware of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, that he was entitled to work in a safe environment, and that he was entitled to proper medical care for his injuries. These rights were violated when Plaintiff was forced to work under unsafe conditions, when Plaintiff was provided improper medical care, and when Plaintiff's complaints were ignored. Each of the defendants were deliberately indifferent to Plaintiff's serious pain and suffering. Defendants not only knew of this risk of substantial harm but operated to develop and promote this risk of substantial harm and then failed to take reasonable measures to abate it. Plaintiff did, as a direct and proximate result of Defendants behavior, incur substantial harm both physical and mental. Defendants both created conditions that posed a serious threat to Plaintiff's safety, and demonstrated deliberate indifference to that threat, in violation of Plaintiff's Eighth Amendment right to be free from

cruel and unusual punishment. *See Farmer v. Brennan,* 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

34. ODOC was directly aware of the unsafe conditions and of plaintiff's injuries, but no one took action to provide Plaintiff any relief. ODOC was made aware by virtue of grievances filed by Plaintiff and notified directly by his Notice of Intent to Sue.

35. Collette Peters, the ODOC Director was aware by virtue of grievances filed by Plaintiff and by his Notice of Intent to Sue.

36. Jeff Premo, OSP Superintendent, was aware by virtue of grievances filed by Plaintiff and by his Notice of Intent to Sue. Jeff Premo established the policy followed by Defendants Davis and Ridderbusch of not providing all inmates working in Food Services with work boots sufficient to protect them from injuries such as those sustained by Plaintiff.

37. Carrie Coffey, the OSP Health Services Manager, was aware by virtue of grievances filed by Plaintiff and by his Notice of Intent to Sue.

38. Julie McCrae, a treating nurse for OSP, was aware of the injuries caused to Plaintiff because she is the one who caused the injuries. She was further made aware by virtue of grievances filed against her. Her actions in ripping the bandage from Plaintiff's wound constitute the unnecessary and wanton infliction of pain which is cruel and unusual punishment forbidden by the Federal Constitution's Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

39. Brenden Magee, the OSP Nurse Manager, was aware of the injuries caused to Plaintiff because he was the one who answered kytes and other communications in an attempt to cover up the injuries incurred by Plaintiff at the hands of one of his nurses. Plaintiff filed a grievance against Defendant Magee on the issues alleged in this Complaint.

40. Keith Davis, OSP Food Services Manager, was aware of the dangerous conditions in the area under his supervision because Plaintiff advised him of the danger prior to his injury. Keith Davis followed and enforced the policy of not providing all inmates working in Food Services with work boots sufficient to protect them from injuries such as those sustained by Plaintiff. Plaintiff filed a grievance against Defendant Davis on the issues alleged in this Complaint.

41. Richard Ridderbusch, OSP Assistant Food Services Manager, was aware of the dangerous condition in the area under his supervision because Plaintiff advised him of the danger prior to his injury. Richard Ridderbusch followed and enforced the policy of not providing all inmates working in Food Services with work boots sufficient to protect them from injuries such as those sustained by Plaintiff. Plaintiff filed a grievance against Defendant Ridderbusch on the issues alleged in this Complaint.

IX

INJURY INFLICTED

42. As a result of the Defendants' knowing actions and inactions, as set forth above, Plaintiff suffered the following injuries:

43. Each Defendant was aware of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment for denying him humane conditions of confinement. These rights were violated where Plaintiff was, and continues to be, as a condition of his confinement, facing substantial risk of serious harm. Defendants not only knew of this risk of substantial harm but operated to develop and promote this risk of substantial harm and then failed to make reasonable measures to abate it. Plaintiff did, as a direct and proximate result of Defendants behavior, incur substantial harm both physical and mental. The Eighth Amendment right to be free from cruel

and unusual punishment include the right that plaintiff not be placed in dangerous working conditions and that he not be treated with deliberate indifference to his serious medical needs claim.

44. As a direct consequence of defendants' combined actions, Plaintiff's feet were badly burned and then re-injured by Nurse McCrae. Action by other officials after the fact were designed to cover up the wrongdoing that caused plaintiff's injuries.

X

PENDANT /SUPPLEMENTAL JUISDICTION STATE COURT TORT CLAIMS

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45. As direct and proximate result of the facts and acts set forth above, the several Defendants committed intentional infliction of emotional distress upon Plaintiff in that, by way of their intentional acts they intended to inflict severe emotional distress upon Plaintiff; they did, in fact, cause Plaintiff to suffer severe emotional distress; and their intentional acts comprised extraordinary transgressions of the bounds of socially tolerable conduct. *Bollaert v. Witte,* 101 Or App 654, 792 P2d 465, 466 (1990).

XI

NEGLIGENCE

46. As a proximate result of the facts and acts set forth above, the several Defendants negligently caused damage to Plaintiff's foot through their combined indifference to his medical needs, his requests for further and additional care, his requests for a safe working environment, and their attempts to cover up the harmful actions of others.

XII

MEDICAL MALPRACTICE

Page 16 of 20 - Prisoner Civil Rights Complaint  (42 USC §1983)

47. As a direct and proximate result of the facts and acts set forth above, defendant McCrae has engaged in medical malpractice for the injury she caused to plaintiff's burn wounds and by defendants Brenden Magee, Carrie Coffee, OSBN, and Roberta Poole for their efforts to cover up Nurse McCrae's wrongdoing and OSBN's and Roberta Poole's refusal to accept Plaintiff's complaints, allowing Nurse McCrae to injure others in the future.

## XIII

## ASSAULT AND BATTERY

48. A claim of assault and battery is alleged against defendant Nurse McCrae for her deliberate act of ripping bandages from Plaintiff's foot for vindictive and sadistic reasons. A claim of assault and battery is also alleged against defendants ODOC, Collette Peters, Jeff Premo, OSBN, Roberta Poole, Carrie Coffey, and Nurse Manager Brenden Magee based on an assertion that they were each aware of the actions of those in their employ or under their authority and did nothing to correct those actions, or personally took action to cover up the actions of those in their employ or under their authority. Each of these defendants were advised of Nurse McCrae's actions and sanctioned her behavior by failing to take remedial action, or by acting to cover up her actions.

## XIV

## STRICT LIABILITY

49. A claim of strict liability is alleged against defendants ODOC, Collette Peters, and Jeff Premo based on the harm caused by the unsafe working conditions in the OSP Food Services Section and the deliberate indifference shown by Managers Davis and Ridderbusch, and by Nurses McCrae, Magee, and Coffey, by OSBN, and by Roberta Poole.

XV

DUE PROCESS

50. As a prisoner Plaintiff has a protected liberty interest under the Due Process Clause of the 14th Amendment to the United States Constitution to safe conditions of confinement and to adequate medical care while in the state's custody. Defendants' combined actions deprived Plaintiff of this right.

XVI

51. It is clear from the facts of this case that Plaintiff was working in an unsafe environment controlled by Defendants ODOC *et al*. It is known that Plaintiff directly notified defendants Davis and Ridderbusch of the dangerous conditions prior to being injured. It is known that Plaintiff's feet were seriously burned as a result of defendants Davis' and Ridderbusch's deliberate indifference and negligence. It is known that Plaintiff was being adequately treated for his burns until he was further injured by Nurse McCrae. It is known that Nurse Magee deliberately attempted to cover up the wrongdoing of Nurse McCrae and that he falsely issued a disciplinary report in his efforts to conceal and cover up such wrongdoing. It is known that that Nurse Manager Coffey deliberately attempted to conceal and cover up the wrongdoing of Nurse McCrae when Coffey declared Plaintiff's legitimate attempts to communicate with staff under her supervision as inappropriate and tampered with witnesses in her efforts to conceal such wrongdoing. It is known that OSBN and Roberta Poole have denied Plaintiff's legitimate complaints about the unprofessional, unethical, and abusive actions of Nurse McCrae (who falls under their authority) in causing Plaintiff injury and attempting to conceal and cover up such wrongdoing. On the basis of strict liability on the part of the defendants, because it is more probable than not that the defendants' deliberate or negligent

actions caused Plaintiff to suffer serious burns, and defendant McCrae's actions constitute medical malpractice, and intentional infliction of physical injury and emotional distress, and defendant Magee's attempts to cover up defendant McCrae's wrongdoing has already been determined by the penitentiary's hearings officer to have been indefensible, these matters are established inferentially.

## XVII

52. Plaintiff has filed Tort Claim Notices with the Oregon Department of Administrative Services (ODAS) pursuant to the provisions of Oregon Revised Statute 30.275 notifying ODAS of the complaints described in this Complaint. ODAS has responded that the State of Oregon will not provide Plaintiff with any relief for these complaints. (See Attachments 11-13.)

53. Plaintiff addressed a letter to the Marion County District Attorney dated 3-28-17 requesting that the DA's office investigate the facts that are the subject of this Complaint. The Marion County District Attorney replied that Plaintiff's complaint had been referred to the Oregon State Police. (See Attachment 14.) Plaintiff has not been contacted by the Oregon State Police.

## XVIII

## RELIEF REQUESTED

Plaintiff requests the following relief:

54. Compensatory damages in the amount of $500,000.00 for the damage to Plaintiff's feet.

55. Compensatory damages in the amount of $250,000.00 for the re-injury to Plaintiff's foot.

56. Damages of $500,000.00 for the intentional infliction of emotional distress.

57. Punitive damages of $500,000.00 for defendants' deliberate indifference.

58. Award of all costs incurred including filing fees, court costs, attorney and expert witness fees where incurred, and other incidental costs.

59. Granting of such further relief as the court might deem necessary and prudent.

XIX

60. Plaintiff reserves the right, with the court's leave, to amend this Complaint to specifications approved by the court's order.

XX

DECLARATION

STATE OF OREGON    )
                   ) ss
County of Marion   )

Plaintiff, upon being sworn under penalty of perjury, does swear that all of the preceding facts set forth in paragraphs 1 through 51 inclusive in the above complaint are true and correct and are a product of Plaintiff's personal knowledge

DATED this 24 day of May, 2017.

Dennis Gines; Plaintiff, *pro se*