**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **DENNIS GINES**, <br><br> Plaintiff, <br><br> v. <br><br> **OREGON DEPARTMENT OF CORRECTIONS (ODOC), a political subdivision in charge of the Oregon State Penitentiary (OSP),** *et al.*, <br><br> Defendants. | Case No. 6:17-cv-00841-SI <br><br> **ORDER** |

**Michael H. Simon, District Judge.**

Plaintiff Dennis Gines brings this action after suffering an injury while incarcerated at the Oregon State Penitentiary ("OSP"). Plaintiff's feet were burned by boiling water while Plaintiff was working in the OSP Food Services Section. Plaintiff asserts that this injury was due to unsafe working conditions, namely a lack of adequate protective footwear. Plaintiff also asserts that in the course of receiving medical treatment for his burns, Defendant Julie McCrae, a treating nurse for OSP, engaged in the unnecessary and wanton infliction of pain to Plaintiff in

PAGE 1 – ORDER

violation of Plaintiff's Eighth Amendment rights against cruel and unusual punishment. Defendants have moved for summary judgment (ECF 49) against all of Plaintiff's claims. For the reasons that follow the Court grants Defendants' motion in part and denies it in part.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

The factual background is drawn from Plaintiff's Complaint.[1] ECF 2. On May 30, 2015, Plaintiff's feet were burned while he was working in the OSP Food Services Section. Another

---

[1] Plaintiff has filed a Motion for Leave to File an Amended Complaint and an Amended Complaint, ECF 63, which Defendants oppose. ECF 75. Plaintiff seeks to add the following defendants in the Amended Complaint: Oregon Department of Corrections; Oregon State Penitentiary; and Gavenan Kate Branin, Director of the Oregon State Board of Nursing. The addition of the first two Defendants is denied because state agencies are immune from suit under the Eleventh Amendment. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).

PAGE 2 – ORDER

inmate also working in the Section was using a five-gallon bucket filled with boiling water to clean the floors. As Plaintiff entered the room, the other inmate poured boiling water onto the floor, and the water filled both of Plaintiff's shoes. The water caused burns to Plaintiff's feet, which required medical treatment for 21 days.

Plaintiff also asserts that at some time prior to being burned, Plaintiff had asked the Assistant Food Services Manager, Richard Ridderbusch, to provide Plaintiff with work boots. Plaintiff states that approximately three-quarters of the inmates in the section were provided with work boots. Ridderbush denied Plaintiff's request and stated that Plaintiff was required to wear his own shoes. Plaintiff asserts that this policy was unreasonable and that if Plaintiff had been issued boots he would not have been injured.

Plaintiff received treatment in the OSP infirmary as a result of the injury. Plaintiff chose 6:00 PM as his daily treatment time, and Plaintiff states that his treatment went well for several days. On June 4, 2015, however, Plaintiff was treated by nurse Julie McCrae, and Plaintiff asserts that McCrae "expressed her anger with Plaintiff for being scheduled to change his bandages at a time she disagreed with." ECF 2. Plaintiff asserts that McCrae insisted that

---

The addition of Gavenan Kate Branin is denied because Plaintiff does not plead facts sufficient to show personal involvement by Branin. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff also seeks to add claims for declaratory and injunctive relief that would require inmate general food-service workers to be issued work boots. Plaintiff is no longer incarcerated, ECF 77, and therefore this new claim is moot. Plaintiff also contends that the decision to treat his burns at the prison clinic rather than sending him to a hospital constituted inadequate medical care in violation of the Eighth Amendment. The Ninth Circuit has held that "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to [the prisoner's] health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Even while viewing the evidence in the light most favorable to Plaintiff, Plaintiff's amended complaint does not show that the decision to treat Plaintiff's burns at the prison infirmary was medically unacceptable. Because Plaintiff's new claims fail as a matter of law, the motion for leave to amend is denied. ECF 63.

Plaintiff's bandage changes be scheduled for 3:00 PM beginning the next day. Plaintiff asked McCrae to keep 6:00 PM as his appointment time, but McCrae said no.

The next day McCrae was not on duty, and Plaintiff asked another nurse, nurse Hughes, if he could return his bandage-change schedule to 6:00 PM. Nurse Hughes allowed the change and rescheduled Plaintiff. On June 9 at 6:00 PM, when Plaintiff was there for his appointment, McCrae was leaving her shift and saw Plaintiff. The next day, McCrae called Plaintiff to the infirmary at 2:45 PM using a cell block sergeant's pass. When Plaintiff arrived, McCrae allegedly began to yell at Plaintiff for having his schedule changed.

McCrae also "insisted that she change Plaintiff's bandage," and Plaintiff attempted to unwrap his bandage himself, fearing that she would harm him. Plaintiff asserts that McCrae was clearly angry, and that he attempted to explain to McCrae that the wound was still fresh. McCrae allegedly said that "I'll be the judge of that," and "grabbed the bandage and pulled it straight up, causing the bandage and gauze pad to twist around Plaintiffs foot until it finally came loose." The unwrapping tore Plaintiff's wound open and removed flesh, causing the wound to bleed. Plaintiff alleges that McCrae began to laugh, and that she said "[l]ook, there's no blood," even as she began to use towels to soak up Plaintiff's blood.

Plaintiff asserts that he sent a three-page Inmate Communication to McCrae, asking her to explain why she had treated him in the way she did. Plaintiff states that McCrae has not responded. Plaintiff returned to the infirmary the next day, and Plaintiff asserts that he discovered that his medical records showed that McCrae did not make a log for his June 10th encounter. Because, Plaintiff asserts, it is the standard procedure in ODOC Health Services to make a log note in an inmate's medical record every time an inmate receives treatment, this

missing log entry is, in Plaintiff's view, evidence of McCrae's attempt to conceal her infliction of injury to Plaintiff.

On June 11th, Plaintiff explained what happened, to Nurse Olachea and Nurse Hughes, and he showed them his bloody bandage. Plaintiff wanted both nurses to witness the bandage and to update his medical file accordingly. Plaintiff asserts that the two nurses said they would update Plaintiff's medical file. When Plaintiff did not hear from either nurse within the 30-day limit to file a grievance, he sent them both a communication to remind them that they said they would make a notation in Plaintiff's medical file. Instead of getting a response back from either Olachea or Hughes, Plaintiff received a response from Nurse Manager Magee. Magee advised Plaintiff not to send any more communications to the nurses and accused Plaintiff of using "staff splitting tactics." The next day, Magee issued Plaintiff a Major Disciplinary Report. Plaintiff argues that Magee intercepted Plaintiff's communications in an effort to prevent him from documenting the improper actions of nurse McCrae.

## DISCUSSION

Defendants argue that they are entitled to summary judgment because: (1) Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment; (2) Defendants, in their individual capacities, are entitled to qualified immunity because Plaintiff cannot establish a violation of his constitutional rights; and (3) Plaintiff failed to provide timely tort claim notice on the pendant state law negligence claims.

To the extent that Plaintiff asserts claims against Defendants in their official capacities, those claims are dismissed. The Supreme Court has held that, absent a waiver by the State or a valid congressional override, the Eleventh Amendment bars a damages action against a state in federal court. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). This bar remains in effect when state officials or agencies are sued for damages in their official capacity.

*Kentucky v. Graham*, 473 U.S. 159, 169 (1985). That is so because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents . . . ." *Brandon v. Holt*, 469 U.S. 464, 471 (1985). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that states, state agencies, and state officials sued officially are not "persons" subject to suit under Section 1983). Therefore, the allegations and any related damages claim against the Defendants in their official capacity are barred by the Eleventh Amendment. The Court will therefore analyze Defendants' latter two arguments relevant to claims against Defendants in their individual capacities: that they are entitled to qualified immunity, and that Plaintiff failed to provide timely tort claim notice.

A. **Qualified Immunity**

Defendants argue that they are entitled to qualified immunity because: (1) Plaintiff received adequate medical care to treat his injury; (2) the denial of work boots did not violate Plaintiff's constitutional rights, and relatedly, Plaintiff does not have a clearly established constitutional right to receive work boots; and (3) Nurse McCrae did not use excessive force as retaliation in violation of the Eighth Amendment, and assuming any force was used during the bandage change incident, the force was not more than de minimis. The Court addresses each of these arguments in turn, but first discusses the doctrine of qualified immunity applicable to all three of these arguments.

"The doctrine of qualified immunity protects government officials from liability for civil damages." *Wood v. Moss*, 134 S.Ct. 2056, 2066-67 (2014); *Krainski v. Nevada ex. Rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Whether qualified

PAGE 6 – ORDER

immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts. And reasonableness of official action, in turn, must be 'assessed in light of the legal rules that were clearly established at the time [the action] was taken.'" *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866 (2017) (citation omitted) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) and *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "The privilege is an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quotation marks omitted) (emphasis in original). For this reason, the Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). Qualified immunity, however, is only an immunity from suit for damages, it is not an immunity from suit for declaratory or injunctive relief. *See L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993).

In *Saucier*, the Supreme Court outlined a two-step process for determining the applicability of the qualified immunity doctrine. 533 U.S. at 200. The first step is to determine "whether a constitutional right would have been violated on the facts alleged." *Id*. The second step is to determine "whether the right was clearly established." *Id*. The constitutional issue, however, need not be addressed first in every case. *Pearson*, 555 U.S. at 227. Regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not clearly established or the officer could have reasonably believed that his particular conduct was lawful. *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).

To determine whether a government official's conduct violates clearly established law, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Ziglar*, 137 S.Ct. at 1867. To be clearly established,

"[i]t is not necessary . . . that the very action in question has previously been held unlawful. That is, an officer might lose qualified immunity even if there is no reported case directly on point. But in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent. *Id.* (citations and quotation marks omitted). "The 'clearly established' requirement 'operates to ensure that before they are subject to suit, [government officials] are on notice their conduct is unlawful.'" *Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (alteration in original). Thus, the key inquiry in determining whether an officer has qualified immunity is whether the officer had "fair warning" that his conduct was unconstitutional. *Hope*, 536 U.S. at 741; *see also Saucier*, 533 U.S. at 202 (noting that the law need not be a "precise formulation of the standard" as long as "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand"); *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013) ("Rather, the relevant question is whether 'the state of the law at the time gives officials fair warning that their conduct is unconstitutional.'" (quoting *Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 1003 (9th Cir. 2010) (en banc) ("[T]he specific facts of previous cases need not be materially or fundamentally similar to the situation in question."))).

The plaintiff bears the burden of making a showing that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). When considering whether qualified immunity applies, the court must resolve all factual disputes in favor of the party asserting the injury..

   **1. Adequate Medical Care**

The government has an obligation "to provide medical care [to] those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The unnecessary and wanton infliction of pain is proscribed by the Eighth Amendment. *Id.* at 104. In this context,

PAGE 8 – ORDER

however, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. Allegations that a medical professional was negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Id.*

To establish an Eighth Amendment violation under § 1983 a prisoner must satisfy "both the objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)). First, the plaintiff must show that the prison official deprived him of the "minimal civilized measure of life's necessities." *Id*. (quotations and citation omitted). Second, he must demonstrate that the prison official "acted with deliberate indifference in doing so." *Id.* (quotations and citation omitted).

Defendants argue that Plaintiff's alleged deprivation was not "sufficiently serious" to satisfy the objective component of the two-part test to establish an Eighth Amendment violation. The Ninth Circuit has held that a "serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quotation omitted). In *Clement*, the panel held that the "painful effects of pepper spray" satisfied the objective component of the two-part test. *Id.* The Court therefore finds that a burn wound requiring 21 days of treatment also satisfies the objective component, because the failure to treat such a wound could result in further significant injury or the unnecessary and wanton infliction of pain.

Defendants also argue that Plaintiff cannot meet the subjective element of the two-part test because Defendants' act of repeatedly treating Plaintiff's injury negates the culpable mental state requirement. Defendants cite *Estelle* for this proposition. 429 U.S. at 108. The plaintiff's

claim in *Estelle*, however, was "based solely on the lack of diagnosis and inadequate treatment of his back injury." *Id.* at 107. In this case, in contrast, Plaintiff's Eighth Amendment claim is based on allegations of intentional pain caused by McCrae because she was angry at Plaintiff for changing his bandaging schedule. Plaintiff states that he told McCrae that Plaintiff's wound was still fresh. McCrae allegedly said that "I'll be the judge of that," and "grabbed the bandage and pulled it straight up, causing the bandage and gauze pad to twist around Plaintiffs foot until it finally came loose." The unwrapping allegedly tore Plaintiff's wound open and removed flesh, causing the wound to bleed. Plaintiff alleges that McCrae began to laugh, and that she said "[l]ook, there's no blood," even as she began to use towels to soak up Plaintiff's blood.

Plaintiff makes these assertions in a verified complaint. A verified complaint may be used as an opposing affidavit under Fed. R. Civ. Proc. 56 if it is based on personal knowledge, sets forth specific facts admissible in evidence, and the plaintiff states under penalty of perjury that the contents are true and correct. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995). Plaintiff also offers exhibits as evidentiary support of the alleged conduct, including grievances, grievance appeals, and a copy of a cell block sergeant's pass summoning Plaintiff to the infirmary at 2:45 PM on June 10th. These allegations satisfy the subjective element of the two-part test insofar as they assert that McCrae engaged in the "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *see also Estelle*, 429 U.S. at 105-06 ("In order to state a cognizable claim, a prisoner must allege *acts or omissions* sufficiently harmful to evidence deliberate indifference to serious medical needs.") (emphasis added). The Court

therefore rejects Defendants' argument that, as a matter of law, Plaintiff received adequate medical care. Defendants are therefore not entitled to qualified immunity on this claim.[2]

   2. **Denial of Work Boots**

Defendants argue that "the denial of work boots did not violate Plaintiff's constitutional rights, and relatedly, that Plaintiff does not have a clearly established constitutional right to receive work boots" and that Defendants are therefore entitled to qualified immunity from Plaintiff's claims related to the alleged deprivation. ECF 49. Plaintiff's Complaint makes clear, however, that he is not arguing that there is a clearly established right to receive work boots. Instead, Plaintiff contends that the denial of work boots violated Plaintiff's right to be in a "safe environment" and that Defendants "failed to take reasonable measures to abate" the "risk of substantial harm." ECF 2. *See Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984) (Prison officials may violate the Eighth Amendment by not taking "reasonable measures to guarantee the safety of the inmates."). Plaintiff also alleges that Defendants "demonstrated deliberate indifference" to the risk of harm by not issuing Plaintiff work boots. *See Wilson*, 501 U.S. at 297 (holding that plaintiff must also show that the prison official effecting the deprivation had a "sufficiently culpable state of mind" as evidenced by, at minimum, "deliberate indifference" to the risk of harm.).

---

[2] The Court notes, however, that Plaintiff has made factual allegations only about the conduct of McCrae regarding the unnecessary and wanton infliction of pain. "Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff asserts that Defendants Coffey and Magee attempted to conceal McCrae's alleged wrongdoing but does not state a cause of action based on that alleged concealment beyond a general Eighth Amendment violation. Because Plaintiff does not assert that any other Defendant participated in the unnecessary and wanton infliction of pain to Plaintiff, the claims against Defendants Coffey and Magee based on deliberate indifference to Plaintiff's medical needs are dismissed.

PAGE 11 – ORDER

Defendants argue that "OSP has developed a list of inmate work assignments that require boots to be issued, general foodservices workers are not on that list. The reasoning behind the policy is based on a systematic review of safety conditions of foodservices workers at OSP." ECF 49. Defendants also assert that in this case, "OSP conducted an internal review of Plaintiff's work boots grievance with the Department Safety Manager and the Institution Safety Committee. Based on the lack of reported incidents of injury, the Committee decided against issuing work boots to Plaintiff." ECF 49.

While the Court liberally construes the filings of a *pro se* plaintiff and affords the plaintiff the benefit of any reasonable doubt, Plaintiff has not offered any evidence that Defendants "demonstrated deliberate indifference" to a "substantial risk of serious harm" in not providing Plaintiff work boots. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The court need not credit the plaintiff's legal conclusions that are couched as factual allegations insofar as Plaintiff states that Defendants were deliberately indifferent to a substantial risk of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The evidence offered by Plaintiff indicates that the Penitentiary Superintendent reviewed the issue with the Department Safety Manager and decided that issuing boots to all Foodservice inmate workers was not warranted "based on the lack of reported incidents." ECF 2-1. The Court therefore finds that because Plaintiff does not offer any evidence of deliberate indifference by prison officials, his claims about the denial of work boots do not amount to a violation of the Eighth Amendment. Defendants are therefore entitled to qualified immunity on these claims.

### 3. Excessive Force

Defendants argue that McCrae did not use excessive force in violation of the Eighth Amendment, and assuming any force was used, it was not more than *de minimis*. The Supreme Court has held that the use of excessive physical force against a prisoner may constitute cruel

PAGE 12 – ORDER

and unusual punishment even when the inmate does not suffer serious injury. *Hudson v. McMillan*, 503 U.S. 1, 6-7 (1992). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. To establish an Eighth Amendment violation, a plaintiff must establish that the use of force was more than de minimis; not that his injury was more than de minimis. *See Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002); *see also Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir.1991) ("[I]t is not the degree of injury which makes out a violation of the eighth amendment. Rather, it is the use of official force or authority that is intentional, unjustified, brutal and offensive to human dignity.") (internal quotation marks omitted).

Although the injury that Plaintiff alleges, namely the tearing of a wound in a fashion that removes flesh, causing the wound to bleed, may not be *de minimis*, the single use of force that Plaintiff alleges McCrae used is *de minimis*: Plaintiff asserts that McCrae "grabbed the bandage and pulled it straight up, causing the bandage and gauze pad to twist around Plaintiffs foot until it finally came loose." Plaintiff has alleged a *de minimis* level of force used by McCrae, and therefore Plaintiff's excessive use of force claims are dismissed. *See Anthony v. Schackmann*, 402 Fed.Appx. 207, 208 (9th Cir. 2010) (holding that "unprovoked, single slap" constituted only de minimis force that did not violate Eighth Amendment).

**B. Timely Tort Claim Notice**

Pursuant to the Oregon Tort Claims Act (OTCA), a plaintiff pursuing an action against the state must provide notice of the claim within 180 days of the alleged loss or injury. ORS § 30.275. The OTCA specifies the required content of the notice and provides that for claims against the state or an officer, formal notice must be given. The burden of proving proper and timely notice is on the plaintiff. ORS § 30.275(7). The pleading and proof of notice sufficient to satisfy the requirements of the OTCA is a mandatory and a condition precedent to recovery

PAGE 13 – ORDER

under the OTCA. *Beaver v. Pelett*, 299 Or. 664, 671 (1985). Failure to provide timely notice of claim can be fatal to a plaintiff's tort claim against a public body. *Denucci v. Henningsen*, 248 Or. App. 59, 66 (2012).

Plaintiff states that the actions of McCrae occurred on June 10, 2015. Plaintiff's tort claim notices are dated May 15, 2017, and December 5, 2017. Plaintiff failed to provide notice within 180 days of the alleged abuse. The state law claims of intentional infliction of emotional distress, medical malpractice, strict liability, and negligence therefore fail as a matter of law.

## CONCLUSION

Defendants' motion for summary judgment (ECF 49) is DENIED with respect to Plaintiff's claim that Defendant McCrae engaged in the unnecessary and wanton infliction of pain to Plaintiff in violation of the Eighth Amendment. Defendants' motion is GRANTED in all other respects. Plaintiff's motion for leave to file an amended complaint (ECF 63) is DENIED. Plaintiff's fifth motion for appointment of counsel (ECF 77) is DENIED. The Court has previously denied Plaintiff's motions for appointment of counsel. ECF 55, 57, and 62. Plaintiff shall continue to proceed pro se.

**IT IS SO ORDERED.**

DATED this 22nd day of April, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge